**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CAITLIN ELLIOT, CALVIN JORDAN,** | ) | |
| **JUSTIN SANDERS, AJEE SMITH,** | ) | |
| **KENNETH GHANOR, LATARSHA** | ) | |
| **BAILEY, CHRISTOPHER WILLIAMS,** | ) | |
| **and DARREN SIMON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00638** |
| | ) | **Judge Aleta A. Trauger** |
| **NTAN, LLC, d/b/a** | ) | |
| **ACTION NISSAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Docket No. 14) filed by the defendant, NTAN, LLC, d/b/a Action Nissan ("Action Nissan"), to which the plaintiffs, Caitlin Elliot, Calvin Jordan, Justin Sanders, Ajee Smith, Kenneth Ghanor, Latarsha Bailey, Christopher Williams, and Darren Simon, have filed a Response (Docket No. 18) and Action Nissan has filed a Reply (Docket No. 19). For the reasons discussed herein, Action Nissan's motion will be granted and the case will be stayed.

## BACKGROUND

Action Nissan is a car dealership. The plaintiffs are former employees of Action Nissan. Starting in 2015, all prospective Action Nissan employees were required to apply via an online application. To initiate the online application process, applicants select an opening from a jobs list on Action Nissan's website. (Decl. of Margo Dolan, Docket No. 16-5 at 2.) After selecting a position, applicants are prompted to create an account with a username and password. (*Id.*) They

1

then begin the online application, which is seven pages long. (*Id*.) Applicants must enter certain information on each page before proceeding to the next page. (*Id*.) The last page is a standalone Applicant Statement and Agreement ("Applicant Agreement") that contains a binding arbitration provision. (*Id*. at 3.) Upon reaching the Applicant Agreement, applicants have three options. They can either (1) print the Applicant Agreement; (2) click "Finish Later," which will save their application and allow the applicant to log back in at a later time to complete the application; or (3) electronically sign the Applicant Agreement, agreeing to its terms and acknowledging that the applicant has "read the above statements and understand[s] the same." (Docket No. 16 at 3.)

The plaintiffs were employed by Action Nissan in the period ranging from 2015 to 2018. They were hired after submitting applications online, with the exception of Darren Simon, who was hired before Action Nissan began utilizing the online application system. Simon signed an agreement containing identical arbitration language to the provision in the current Applicant Agreement. (Docket No. 16-13.) The Applicant Agreement mandates that employees and Action Nissan resolve any disputes arising from employment pursuant to Action Nissan's Dispute Resolution Program (the "ANDR Program"). The Applicant Agreement states:

> I also acknowledge that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the Tennessee Human Rights Act, the Tennessee Fair Employment Practices Law, the Tennessee Handicap Discrimination Act, the Tennessee Civil Rights Act, the Tennessee Equal Pay law, the Tennessee Antidiscrimination Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, as amended, as well as all other applicable local, state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any

relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . shall be submitted to and determined exclusively by binding arbitration.  I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by the Tennessee Human Rights Commission and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure.

(Docket No. 16-5 at 3.)

The Applicant Agreement specifically highlights that both parties waive their rights to a jury trial, stating in bolded capital letters: **I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY**.  (*Id.* (emphasis in original).)  The Applicant Agreement also sets out the standards under which an arbitration proceeding will operate:

I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, 9 U.S.C. section 1, et seq., in conformity with the procedures of the Tennessee Uniform Arbitration Act and the Tennessee Rules of Civil Procedure (including all mandatory and permissive rights to discovery) provided that said rules do not contradict the Federal Arbitration Act.  However in addition to requirements imposed by law, any arbitrator herein shall be a retired trial court judge and shall be subject to disqualification on the same grounds as would apply to a judge of a state court.  To the extent applicable in civil actions in Tennessee state courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer/motion to strike), all rules of evidence, and all rights to resolution of the dispute by means of motions for summary judgment and/or judgment on the pleadings.  The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, any such determinations shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") for his/her determinations other than such controlling law. . . .  The allocation of costs and arbitrator fees shall be governed by statute or controlling case law.

(*Id.*)  On July 12, 2018, the plaintiffs filed suit, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII"); 42 U.S.C. § 1981 ("Section

1981"); and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"). (Docket No. 1.) On September 4, 2018, Action Nissan moved to compel arbitration.

## LEGAL STANDARD

The Arbitration Agreement provides that it is to be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). (*Id.* at 3.) Thus, the question of whether the plaintiffs' claims must be arbitrated is governed by the FAA. The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a strong presumption in favor of arbitration under the FAA. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 652–53 (6th Cir. 2003). Any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). The party opposing arbitration has the burden to prove that there is a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 750 (E.D. Tenn. 2011) (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). The court views the facts and all inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Great Earth Cos., Inc.*, 288 F.3d at 889.

Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2. An arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393. Likewise, "ordinary state-law principles that govern

the formation of contracts" apply to the court's analysis. *Id.* at 394 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## ANALYSIS

In determining whether to compel arbitration of a party's claims, the court must "engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). This review requires the court to determine whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of the agreement." *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008). Action Nissan asserts that the Applicant Agreement is valid and enforceable and that the claims raised in the litigation clearly fall within its scope. In response, the plaintiffs argue that their Applicant Agreement (1) lacks mutual assent; (2) is an unenforceable contract of adhesion due to lack of meaningful choice and unconscionability; (3) is fatally vague and indefinite as to essential terms and (4) does not provide for the effective vindication of the plaintiffs' statutory rights. The court will address each argument in turn.

### I. Mutual Assent

Under Tennessee law, a contract must result from a meeting of the minds of the parties in mutual assent to the contract's terms. *Higgins v. Oil, Chemical and Atomic Workers Int'l Union, Local No. 3–677*, 811 S.W.2d 875, 879 (Tenn. 1991). "Although the question of mutual assent involves largely an objective analysis, the parties' intent remains relevant, in particular the circumstances surrounding the formation of the contract." *Walker*, 400 F.3d at 383. There is a general presumption that a party is bound by a signed contract expressing an agreement because

both parties have a duty to learn a contract's contents before signing. *See Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156–57 (Tenn. Ct. App. 1993).

In arguing that they did not mutually assent to the arbitration provision of the Applicant Agreement, the plaintiffs rely exclusively on the Sixth Circuit's decision in *Walker*. There, the court found no mutual assent based on five considerations:

> Plaintiffs were presented with the Arbitration Agreement in a hurried fashion and told to simply sign if they wanted to be considered for employment. The agreements were presented to Plaintiffs on a "take it or leave it" basis, and Plaintiffs had no real bargaining power; they had to sign the agreements if they wanted to be considered for employment. Although the Arbitration Agreements state that Plaintiffs had the right to consult an attorney, in reality, they had no opportunity to exercise that right because they had to sign the agreements on the spot. Plaintiffs' educational limitations (many have not completed high school and were seeking jobs that would provide them poverty-level wages) also were obvious. Finally, on those occasions when Ryan's managers took it upon themselves to explain the Arbitration Agreement, they gave inaccurate information about the arbitration process and did not tell them that they were waiving their right to a jury trial.

Like the plaintiffs in *Walker*, the plaintiffs in this case were presented with the Applicant Agreement on a "take it or leave it" basis. They would not have been hired, had they not signed the Applicant Agreement. However, that is where the similarities to *Walker* end. The plaintiffs here were not presented with the Applicant Agreement in a hurried fashion: they accessed it themselves via the online application process.[1] Nor were the plaintiffs deprived of time to consult an attorney. The online application allows applicants to save the application agreement and return to it at their leisure. The plaintiffs were not in any way compelled to submit their application and

---

[1] This is perhaps inaccurate with regard to one plaintiff, Darren Simon, who completed an application before Action Nissan adopted the online application process. However, the plaintiffs do not plead facts indicating that Simon was hurried or that he was deprived an opportunity to consult an attorney. Without any pleaded facts differentiating his application process from that of his co-plaintiffs, the court must assume that the circumstances of his hiring were materially the same as those who applied online.

agree to arbitrate claims before speaking to an attorney about its contents.[2]  There is no evidence in the record indicating that the plaintiffs suffered from educational limitations or that they were applying for positions that would offer them poverty-level wages.  And there is no evidence in the record that anyone at Action Nissan provided any misinformation to any of the plaintiffs.  Beyond the single analogous fact that the plaintiffs had to sign the Applicant Statement if they wanted to work at Action Nissan, *Walker* is inapposite.  In light of the general presumption that parties to a contract agree to its terms by signing it, the court finds that the plaintiffs mutually assented to the Applicant Agreement when they signed it.

## II.     Contract of adhesion

Under Tennessee law, in order to find that a contract is an unenforceable adhesion contract, the contract must be both adhesive and unconscionable.  *See Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967, 976–77 (6th Cir. 2007); *see also Cooper v. MRM Inv. Co*., 367 F.3d 493, 503 (6th Cir. 2004).  The Supreme Court of Tennessee has defined an adhesion contract as a standard form offered on a take it or leave it basis, without giving the weaker party to the negotiation an opportunity to bargain, and under conditions where the weaker party has a lack of meaningful choice.  *Id*. at 975–76; *see also Cooper*, 367 F.3d at 499 (citing *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996)).  "The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms."  *Buracynzki*, 919 S.W.2d at 320.

---

[2] The plaintiffs separately contend that the Applicant Agreement is deficient because, unlike the agreement in *Walker*, it does not notify them of their right to consult an attorney.  Courts have rejected this argument.  *See Cunningham v. Henry Ford Health Sys.*, No. 2:17-CV-11015, 2017 WL 5564599, at *3 (E.D. Mich. Nov. 20, 2017) ("The requirement that Cunningham have time to consult an attorney is not accompanied by a concomitant requirement that the employer advise her to seek legal counsel.").

The Applicant Agreement is not an adhesive contract because the plaintiffs do not establish a lack of meaningful choice. In *Seawright*, the Sixth Circuit explained that an arbitration agreement in an employment contract is not a contract of adhesion simply because a potential employee has no choice but to agree in order to be hired or to continue employment in a particular job. 507 F.3d at 976 (citing *Cooper*, 367 F.3d at 502). Rather, a lack of meaningful choice requires a showing that the employee has no other comparable employment options. *Id.* ("Seawright has presented no evidence that she would be unable to find suitable employment if she had refused to be a party to the arbitration agreement. Thus, we hold that the agreement is not a contract of adhesion."); *Cooper*, 367 F.3d at 502 ("To find this contract adhesive, however, there must be evidence that [the employee] would be unable to find suitable employment if she refused to sign [the employer's] agreement. She presented no such evidence. For instance, she did not allege that she looked for comparable jobs but was unable to find one."); *Walker*, 400 F.3d at 384 ("To find their Arbitration Agreements adhesive, the district court was required to cite evidence that [Plaintiffs] would be unable to find suitable employment if [they] refused to sign [the arbitration] agreement.") (internal quotations omitted). The plaintiffs here put forth no evidence that they lacked a meaningful choice between entering the agreement or seeking employment elsewhere. The record is devoid of any evidence whatsoever regarding an absence of comparable employment options. In light of governing Sixth Circuit precedent, the plaintiffs cannot establish that they lacked meaningful choice without such evidence. The Applicant Agreement is thus not adhesive.

Even if the Applicant Agreement were an adhesive contract, it would nonetheless be enforceable because it is neither substantively nor procedurally unconscionable. Under Tennessee law, a mere inequality between two parties to an agreement is not sufficient to find unconscionability. *See Cooper*, 367 F.3d at 504 (finding no unconscionability, even where the

agreement was between a sophisticated employer and a low-level fast-food worker). Rather, unconscionability is found where "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Seawright*, 507 F.3d at 977 (quoting *Huan v. King*, 690 S.W. 2d 869, 872 (Tenn. Ct. App. 2001)). Unconscionability requires a showing that either the weaker party to the agreement—by virtue of age, intelligence, education, or experience—was so clearly unable to understand the terms of the agreement as to shock the conscience (procedural unconscionability), or that the terms of the agreement are so unfair as to be unreasonable (substantive unconscionability). *Id.* at 504–505. The Sixth Circuit has held that an arbitration agreement in the employment context is not so unreasonable if the terms are mutual and the agreement is not aimed solely at limiting the liability of the employer. *Id.* at 505; *Seawright*, 507 F.3d at 977.

The plaintiffs have not established any grounds supporting procedural or substantive unconscionability. An imbalance of power between Action Nissan and the plaintiffs is not sufficient under the law to establish procedural unconscionability. The plaintiffs have presented no evidence to suggest that age, education, or experience rendered them unable to understand the terms of the Applicant Agreement. The substantive terms of the arbitration agreement are explicitly mutual, as Action Nissan has waived its rights to pursue litigation just as the plaintiffs have. (*See* Docket No. 16-5 at 3 ("Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy . . . shall be submitted to and determined exclusively by binding arbitration.").) The Applicant Agreement is therefore not unconscionable.

### III.     Vindication of Statutory Rights

"The Supreme Court has made clear that statutory rights . . . may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison*, 317 F.3d at 658. Before compelling arbitration, the court must first determine from the language of the arbitration agreement that "the arbitral forum [provides] litigants with an effective substitute for the judicial forum." *Id*. at 659. "Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory." *Floss v. Ryan's Family Steak Houses, Inc*., 211 F.3d 306, 316 (6th Cir. 2000) (quoting 1 Samuel Williston, Contracts § 43, at 140 (3d ed. 1957)). The plaintiffs argue that the Applicant Agreement is insufficiently definite to allow for effective vindication of their statutory rights.

They first contend that the Applicant Agreement is fatally indefinite because it does not refer to or incorporate typical arbitration procedures, such as those set forth by the American Arbitration Association. "Certainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear." *Doe v. HCA Health Servs. of Tennessee, Inc*., 46 S.W.3d 191, 196 (Tenn. 2001) (quoting 1 Richard A. Lord, Williston on Contracts, § 4:27, at 593 (4th ed.1990)). While the Applicant Agreement does not incorporate American Arbitration Association terms, it does identify the procedural rules and substantive law that shall apply to the arbitration:

> I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, 9 U.S.C. section 1, et seq., in conformity with the procedures of the Tennessee Uniform Arbitration Act and the Tennessee Rules of Civil Procedure (including all mandatory and permissive rights to discovery) provided that said rules do not contradict the Federal Arbitration Act. . . . To the extent applicable in civil actions in Tennessee state courts, the following shall apply and be observed:

all rules of pleading (including the right of demurrer/motion to strike), all rules of evidence, and all rights to resolution of the dispute by means of motions for summary judgment and/or judgment on the pleadings. The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, any such determinations shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") for his/her determinations other than such controlling law.

(Docket No. 16-5 at 3.) Moreover, the Applicant Agreement specifies that the arbitrator must be a retired trial judge: "However in addition to requirements imposed by law, any arbitrator herein shall be a retired trial court judge and shall be subject to disqualification on the same grounds as would apply to a judge of a state court." (Docket No. 16-5 at 3.) This is distinguishable from cases where courts have struck down arbitration agreements due to lack of clarity. In *Hill v. NHC HealthCare/Nashville, LLC*, No. M2005-01818-COA-R3-CV, 2008 WL 1901198 (Tenn. Ct. App. Apr. 30, 2008), the court found an agreement too indefinite where it contained no description at all of the procedures that would govern arbitration. *Id*. at *17 ("The provision in the case before us did not explain arbitration in any detail, and no such explanation was otherwise offered."). By incorporating Tennessee rules and governing law, the Applicant Agreement sets forth specific standards that allow for the vindication of the plaintiff's statutory rights. *See Urology Assocs., P.C. v. CIGNA Healthcare of Tennessee, Inc*., No. M2001-02252-COA-R3-CV, 2002 WL 31302922, at *8 (Tenn. Ct. App. Oct. 11, 2002) (holding that "an arbitration agreement need not contain 'magic words' or 'follow a particular form or phraseology'" when the intention of the parties is clear).

The plaintiffs argue that specific missing terms prevent them from vindicating their statutory rights. For example, they contend that the Applicant Agreement is fatally indefinite because it fails to specify how an arbitrator is selected, where arbitration would be held, and how a party invokes arbitration. However, as noted above, the Applicant Agreement specifically

incorporates the procedures of the Tennessee Uniform Arbitration Act, Tenn. Code Ann. § 29–5–301, *et. seq.* ("TUAA"). Tennessee courts have held that omission of certain arbitral terms may be corrected by reference to the TUAA. *See Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 823 (Tenn. Ct. App. 2015) ("[T]he statutory provisions clearly apply both when a term fails and in the absence of any term chosen by the parties. *See* Tenn. Code Ann. § 29–5–304, –305. Thus, we must conclude that the failure to include these terms is not *per se* fatal to the enforceability of the arbitration clause."). The TUAA specifically provides that a party may request that the court select an arbitrator (§ 29–5–304),[3] that arbitration location is chosen by an arbitrator (§ 29–5–306),[4] and that a party may force arbitration by request to the court (§ 29–5–303).[5] The omission of these terms is therefore not fatal to the Applicant Agreement.

In support of their position that the Applicant Agreement is insufficiently definite, the plaintiffs cite *Floss v. Ryan's Family Steak Houses, Inc*. In *Floss*, the Sixth Circuit found an employer's promise to provide an arbitral forum fatally indefinite where the employer retained unbridled authority to set and change the terms of the arbitration. 211 F.3d at 315–16 ("Though obligated to provide some type of arbitral forum, EDSI has unfettered discretion in choosing the nature of that forum. Specifically, EDSI has reserved the right to alter the applicable rules and

---

[3] "If the arbitration agreement provided a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and a successor has not been duly appointed, the court on application of a party shall appoint one (1) or more arbitrators."

[4] "Unless otherwise provided by the agreement: (1) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail not less than five (5) days before the hearing."

[5] "On application of a party showing an agreement described in § 29-5-302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied."

procedures without any obligation to notify, much less receive consent from, Floss and Daniels."). The Applicant Agreement is clearly distinguishable from the agreement in *Floss*. It sets forth explicit terms for the arbitrator's requisite qualifications. It identifies the substantive law and procedural rules that shall apply to the arbitration. And it does not reserve to Action Nissan the right to alter any applicable rules or procedures without notice to, or consent from, the plaintiffs. Because the Applicant Agreement does not grant Action Nissan an unlimited right to set the terms of the arbitration, it does not prevent the plaintiffs from vindicating their statutory rights.

The plaintiffs also argue that the Applicant Agreement is insufficiently definite as to the fees and costs that arbitration would impose on the plaintiffs. The Applicant Agreement does not contain a cost-sharing provision that would impose undue costs on the plaintiffs should they want to assert an employment claim against Action Nissan. *Compare Morrison*, 317 F.3d at 661 ("A cost-splitting provision should be held unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights."). Instead, the Applicant Agreement states that "[t]he allocation of costs and arbitrator fees shall be governed by statute or controlling case law." (Docket No. 16-5 at 3.) The TUAA provides that allocation of costs and fees be left to the discretion of the arbitrator. Tenn. Code Ann. § 29–5–311 ("Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."). The Supreme Court has upheld cost and fee allocations that present only a speculative risk of burdensome expense to employees. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, (2000) ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement. To invalidate the agreement on that basis would undermine the liberal federal policy favoring

arbitration agreements. It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.") (internal citation and quotation marks omitted). The Applicant Agreement is thus not insufficiently definite as to how costs and fees shall be allocated.

## IV. Stay of proceedings

The plaintiffs request that the court stay the case pending arbitration, pursuant to the FAA. Once an arbitration clause is deemed enforceable, it is generally proper under the FAA to issue a stay of all further proceedings until arbitration is complete. *See, e.g., Fazio*, 340 F.3d at 392. However, when all of the plaintiffs' claims in a suit will be referred to arbitration, the Sixth Circuit has held that the case may be dismissed rather than stayed. *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x. 972, 975 (6th Cir. 2009) (affirming the district court's order compelling arbitration and dismissing the complaint when all claims were referred to arbitration); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (noting that the "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). Some district courts in this circuit have dismissed actions where all claims are subject to arbitration. *See, e.g., Braxton v. O'Charley's Rest. Props.*, LLC, 1 F. Supp. 3d 722, 728–29 (W.D. Ky. 2014) (collecting cases). This court has found a stay of proceedings appropriate where "there exists the possibility that the parties to the arbitration could conceivably seek assistance from the Court during the arbitration proceedings." *Brooks v. The Finish Line, Inc.*, No. 3:05-0715, 2006 WL 1129376, at *8 (M.D. Tenn. Apr. 26, 2006) (Echols, J.). In *Brooks*, the court stayed proceedings in part because it found that the parties might need the court's assistance in appointing an arbitrator. *Id*. at *8 n.3. As noted above, that is also the case here. Thus, the court finds that stay of proceedings pending arbitration is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Action Nissan's Motion to Dismiss and Compel Arbitration or, in the Alternative, to Stay Proceedings and Compel Arbitration (Docket No. 14) is hereby **GRANTED**.

An appropriate order will enter.

ENTER this 27th day of November 2018.

_____
ALETA A. TRAUGER
United States District Judge